## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| DARLENE JONES, Derivatively on Behalf of Nominal Defendant QUANTUMSCAPE CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>JAGDEEP SINGH, FRITZ PRINZ, TIMOTHY HOLME, KEVIN HETTRICH, FRANK BLOME, BRAD BUSS, JOHN DOERR, JÜRGEN LEOHOLD, JUSTIN MIRRO, DIPENDER SALUJA, J.B. STRAUBEL, and JENS WIESE,<br><br>        Defendants,<br><br>    and<br><br>QUANTUMSCAPE CORPORATION,<br><br>        Nominal Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Darlene Jones ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant QuantumScape Corporation ("QuantumScape" or the "Company"), against certain of its current and former executive officers and members of the Company's Board of Directors (the "Board") for breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff alleges the following upon knowledge as to herself, and upon information and belief as to all matters, based upon an investigation conducted by counsel. Counsel's investigation included, among other things: (a) review of the Company's website, press releases, and filings with the U.S. Securities and

Exchange Commission ("SEC"); (b) review of news and analyst reports concerning the Company; (c) review of pleadings, orders, and filings in connection with other litigations involving the Company; and (d) review of more than 1,200 pages of documents (the "Section 220 Documents") produced by the Company in response to Plaintiff's demand for corporate books and records pursuant to 8 Del. C. § 220.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by QuantumScape's officers and directors.

2.      QuantumScape is a Delaware corporation based in San Jose, California, that develops and sells specialized lithium-metal solid-state batteries for use in electrical vehicles.

3.      The Individual Defendants (as defined below) made, or caused the Company to make, materially false and misleading statements concerning QuantumScape's business. Specifically, they made statements to the effect that the Company's battery technology was "positioned to become a leading supplier of solid-state batteries" for electric vehicles, that the Company's batteries were "designed to be safer, and to deliver greater range, faster charge times and improved cycle life" as compared to other batteries, and that the Company's batteries enjoyed "up to 80% longer range compared to today's lithium-ion batteries." Their false and misleading statements had the effect of misleading the investing public and driving up the Company's stock price in advance of the secondary public stock offering ("SPO"), beginning on December 31, 2020, in the course of which several of the Individual Defendants sold their shares at artificially inflated prices.

4.      These statements were unfounded and untrue. On January 4, 2021, Seeking Alpha published a report revealing that QuantumScape's batteries "will likely never achieve the

performance they claim," that the batteries likely "will only last for 260 cycles or about 75,000 miles of aggressive driving," and that the batteries' "energy density [target for] 2028 will not beat today's state of the art, and will not be state of the art when it is achieved."

5.      On news of this report, the Company's share price declined by approximately 40.8%, or $34.49, from closing at $84.45 per share on December 31, 2020, the previous day of trading and the day of the SPO, to closing at $49.96 per share on January 4, 2021.  The Company's shares have continued to tumble, now trading at less than $7 a share.

6.      The Individual Defendants breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, that: (1) QuantumScape's lithium-metal solid-state batteries did not have the power, longevity, or energy density that they were being held out as having; (2) the Company did not have, and was extremely unlikely to soon develop, the ability to adapt their batteries to be readily usable in electric vehicles; (3) as a result of the foregoing, the statements complained of herein about the Company's business and prospects were materially false and misleading at the time they were made; and (4) the Company failed to maintain adequate internal controls. As a result of the foregoing, QuantumScape's public statements were materially false and misleading at all relevant times.

7.      The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct these false and misleading statements and omissions of material fact.

8. Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

9. In light of the Individual Defendants' misconduct, which has subjected the Company and its top officers to a federal securities fraud class action lawsuit pending in the United States District Court for the Northern District of California (the "Securities Class Action"), the need to undertake intake internal investigation and to implement adequate internal controls is apparent. Through losses from the waste of corporate assets, and losses due to the unjust enrichment of Individual Defendants who were improperly overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein, the Company will have to expend many millions of dollars.

10. The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct.

11. On May 3, 2023, Plaintiff sent a litigation demand to the Board, demanding that the Board "investigate breaches of fiduciary duty by the Company's current and former officers and directors, including causing or allowing the Company to make false and misleading statements about its battery technology and business prospects." A true and correct copy of this Demand is attached hereto as **Exhibit A**.

12. Seven months later, on December 11, 2023, the Board sent an email to Plaintiff's counsel stating it will "defer any investigation" of the allegations in Plaintiff's Demand and instead just monitor certain pending litigations that involve the same subject matter of the Demand, including the Securities Class Action, that had *already survived a motion to dismiss and had been granted class certification, almost assuring exposure of significant damages to the Company*.

13.     The Board's undue delay and failure to commence any semblance of an investigation into the alleged wrongdoing despite the Company's increasing risk of liability in the Securities Class Action is not a valid exercise of business judgment.

14.     For these reasons and as set forth in greater detail herein, including the Board's unreasonable delay in investigating these matters, Plaintiff now files this action against the Individual Defendants who abandoned their fiduciary duties and should now be held accountable for the financial and reputational harm suffered by the Company and its shareholders.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

16.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that this is a civil action between citizens of diverse U.S. states and citizens of a foreign country, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs, including claims for the damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

18.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

20.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because Nominal Defendant QuantumScape is incorporated in this District and conducts business in this District.

**PARTIES**

*Plaintiff*

22.     Plaintiff Darlene Jones is a shareholder of QuantumScape common stock and has held QuantumScape shares continuously during the relevant time period. Jones is a citizen of the United States and resident of Texas.

*Nominal Defendant*

23.     Nominal Defendant QuantumScape is a corporation organized under Delaware law with its principal executive offices located at 1730 Technology Drive, San Jose, California 95110.

24.     The Company, in its current form, resulted from a merger transaction (the "Merger") between Kensington Capital Acquisition Corp. ("Kensington"), a special purpose acquisition company, or "SPAC," and a separate legal entity also called QuantumScape Corporation (f/k/a QuantumScape Battery, Inc.), formerly a privately held company and now a subsidiary of the Company ("Legacy QuantumScape"). The Merger was announced on September 3, 2020, and following approval of the Kensington's public shareholders, was completed on November 27, 2020. The Company's Class A common stock now trades on the New York Stock Exchange ("NYSE") under the ticker symbol "QS."

*Individual Defendants*

25.    Defendant Jagdeep Singh is the Company's Chief Executive Officer ("CEO") and Chairman of its Board. Defendant Singh co-founded Legacy QuantumScape, and was that company's CEO and a member of its board of directors until the Merger. Upon information and belief, Singh is a citizen of the United States and resident of California.

26.    Defendant Timonthy Holme is the Company's Chief Technology Officer ("CTO"). Defendant Holme co-founded Legacy QuantumScape and was that company's CTO until the Merger. Upon information and belief, Holme is a citizen of the United States and resident of California.

27.    Defendant Kevin Hettrich is the Company's Chief Financial Officer ("CFO"). Defendant Hettrich was CFO of Legacy QuantumScape from September 2018 until the Merger, and previously held various executive and management positions at that company since January 2012. Upon information and belief, Hettrich is a citizen of the United States and resident of California.

28.    Defendant Fritz Prinz is a member of the Board. Defendant Prinz co-founded Legacy QuantumScape and was a member of that company's board of directors until the Merger. Upon information and belief, Prinz is a citizen of the United States and resident of California.

29.    Defendant Frank Blome has been a member of the Board since the Merger in November 2020, and was a member of the board of directors of Legacy QuantumScape since September 2020. Defendant Blome is the Head of the Battery Center of Excellence at Volkswagen (as defined below), and serves as one of Volkswagen's designees on the Board. Upon information and belief, Blome resides in, and is a citizen of, Germany.

30.     Defendant Brad Buss has been a member of the Board since the Merger in November 2020, and is Chair of the Board's Audit Committee. Previously, Defendant Buss was a member of the board of directors of Legacy QuantumScape since August 2020. Upon information and belief, Buss is a citizen of the United States and resident of California.

31.     Defendant John Doerr was a member of the Board from the Merger in November 2020 until his resignation in February 2022. Defendant Doerr previously was a member of the board of directors of Legacy QuantumScape since December 2010. Upon information and belief, Doerr is a citizen of the United States and resident of California.

32.     Defendant Jürgen Leohold has been a member of the Board since the Merger in November 2020, and was a member of the board of directors of Legacy QuantumScape since May 2015. Defendant Leohold held various leadership positions responsible for research and development at Volkswagen and its affiliates between April 2006 and Mary 2019. Upon information and belief, Leohold resides in, and is a citizen of, Germany.

33.     Defendant Justin Mirro was a member of the Board, and was the Board's Lead Independent Director and a member of the Audit Committee, from the Merger in November 2020 until his resignation in April 2022. Prior to the Merger, Defendant Mirro was Chairman and CEO of Kensington since April 2020. Defendant Mirro founded Kensington Capital Partners, LLC, an affiliate of Kensington, in 1999. Upon information and belief, Singh is a citizen of the United States and resident of New York.

34.     Defendant Dipender Saluja has been a member of the Board since the Merger in November 2020 and is a member of the Audit Committee. Previously, Defendant Saluja was a member of the board of directors of Legacy QuantumScape since August 2012. Upon information and belief, Saluja is a citizen of the United States and resident of California.

35.     Defendant J.B. Straubel has been a member of the Board since the Merger in November 2020 and was a member of the board of directors of Legacy QuantumScape since December 2019. Upon information and belief, Singh is a citizen of the United States and resident of Nevada.

36.     Defendant Jens Wiese has been a member of the QuantumScape Board since January 2021. Defendant Wiese is Head of Volkswagen Group M&A, Investment Advisory, and Partnerships, and previously was Head of Group Battery Strategy for Volkswagen. Defendant Wiese serves as one of Volkswagen's designees on the Board. Upon information and belief, Wiese resides in, and is a citizen of, Germany.

37.     Defendants Singh, Holme, and Hettrich are referred to herein as the "Officer Defendants."

38.     Defendants Singh, Prinz, Blome, Buss, Doerr, Leohold, Mirro, Saluja, Straubel, and Wiese are referred to herein as the "Director Defendants."

39.     Defendants Buss, Mirro, and Saluja are referred to herein as the "Audit Committee Defendants."

40.     Defendants Singh, Holme, Hettrich, Singh, Prinz, Blome, Buss, Doerr, Leohold, Mirro, Saluja, Straubel, and Wiese are referred to herein as the "Individual Defendants."

***Relevant Non-Party***

41.     In 2018, Legacy QuantumScape announced a joint venture with non-party Volkswagen Aktiengesellschaft ("Volkswagen") for purposes of establishing a U.S.-based manufacturing facility to produce batteries for use in electric vehicles. Volkswagen has made significant investments in QuantumScape, and following completion of the Merger in November 2020, Volkswagen held approximately 25.5% of the Company's Class A common stock and 11.5%

of its Class B common stock, together representing 13.2% of the Company's total voting power. Volkswagen also has the right to designate two members of the Company's Board.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

42.     By reason of their positions as officers and/or directors of QuantumScape, and because of their ability to control the business and corporate affairs of QuantumScape, the Individual Defendants owed QuantumScape and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage QuantumScape in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of QuantumScape and its shareholders so as to benefit all shareholders equally.

43.     Each director and officer of the Company owes to QuantumScape and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

44.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of QuantumScape, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

45.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the Nasdaq, the Individual Defendants had a duty to prevent and not to allow the dissemination of inaccurate and untruthful information with respect to the Company's financial condition,

performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

46.    To discharge their duties, the officers and directors of QuantumScape were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of QuantumScape were required to, among other things:

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to QuantumScape's own Code of Business Conduct and Ethics (the "Code of Conduct");

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    remain informed as to how QuantumScape conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)    establish and maintain systematic and accurate records and reports of the business and internal affairs of QuantumScape and procedures for the reporting of the business

and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that QuantumScape's operations would comply with all applicable laws and QuantumScape's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

47.     Each of the Individual Defendants further owed to QuantumScape and the shareholders the duty of loyalty requiring that each favor QuantumScape's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

48.     At all times relevant hereto, the Individual Defendants were the agents of each other and of QuantumScape and were at all times acting within the course and scope of such agency.

49.     The Company's Code of Conduct, which applies to all of the Company's directors officers, and employees, including Defendants, requires that:

> Each employee involved in the Company's disclosure process must familiarize themselves with the disclosure requirements applicable to the Company and the

business and financial operations of the Company, and must not knowingly misrepresent, or cause others to misrepresent, facts about the Company to others, whether within or outside the Company, including to the Company's independent auditors, governmental regulators and self-regulatory organizations.

50.     In addition to the foregoing generally applicable duties, under the Audit Committee Charter, the Audit Committee Defendants owe specific duties to QuantumScape and its shareholders to assist in oversight of "the accounting and financial reporting processes and internal controls of the Company" and "the audit and integrity of the Company's financial statements."

51.     The Audit Committee Charter further requires the Audit Committee Defendants to "meet with management, the internal audit department, if applicable, and the Company's independent auditors to review and discuss the Company's internal controls and the integrity of the Company's audited financial statements." As part of that process, the Audit Committee Defendants are required to, among other things, review "the quality and adequacy of the Company's internal controls, and discussion with management and the independent auditor with regard to any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls" and "the Company's disclosure controls and procedures, as well as the quarterly assessments of such controls by the Chief Executive Officer and Chief Financial Officer."

52.     Because of their advisory, executive, managerial, and directorial positions with QuantumScape, each of the Individual Defendants had access to adverse, non-public information about the Company.

53.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by QuantumScape.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

54.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing.  The Individual Defendants caused the Company to conceal the true facts as alleged herein.  The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

55.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.

56.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws.

57.     In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Director Defendants, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

58.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

**FACTUAL ALLEGATIONS**

*QuantumScape's Battery Technology*

59.     QuantumScape aims to develop specialized lithium-metal solid-state batteries for use in electric vehicles ("EVs") and to design a scalable manufacturing process to commercialize its battery technology for the automotive industry.

60.     Solid-state batteries are an aspiring competitor to lithium-ion batteries, which are the conventional and widespread battery technology in use today in most rechargeable devices and in EVs.

61.     Conventional lithium-ion batteries use a liquid separator to separate the battery's cathodes and anodes. The flow of lithium ions from anode to cathode creates electrical power, and the flow back from cathode to anode completes the cycle, building back up the battery's potential.

62.     In contrast, solid-state batteries use a solid separator, such as glass or ceramics, to separate the anode and cathode. The use of a solid separator potentially makes solid-state batteries safer than conventional lithium-ion batteries because the liquid separator used in the latter is flammable and can be dangerous and toxic. The use of a solid separator also enables solid-state batteries to be more compact than conventional lithium-ion batteries.

63.     Despite their potential advantages, solid-state batteries have faced a historical set of challenges that have prevented commercial use.

64.     The principal challenge is that solid-state batteries often form dendrites, which are deposits of lithium metal. Once a dendrite forms, it will grow and eventually short the battery.

65.      Other historical challenges are that solid-state batteries have a long charge time and a short lifespan, are not as energy dense as lithium-ion batteries, do not operate well in low temperatures, and can be unsafe.

66.     QuantumScape claims to have developed a solid-state battery that is as good as, if not better than, conventional lithium-ion batteries, while avoiding the problems that historically plagued solid-state batteries.

### Defendants False and Misleading Statements

67.     Beginning with the announcement of the Merger in September 2020, the Company made a series of false and misleading statements concerning its solid-state batteries, including that the batteries: (a) do not form dendrites; (b) are superior to conventional lithium-ion batteries in terms of range, charge time, cycle life, energy density, safety, and cost; (c) had been tested using uncompromised tests in real-world conditions; and (d) were ready for commercial use as soon as they could be scaled up.

68.     For example, during a joint conference call by Legacy QuantumScape and Kensington on September 3, 2020, defendant Singh stated:

> I know I speak on behalf of the entire QuantumScape team when I say that I am delighted to announce this transaction with Kensington that we expect will allow us to ***deploy our disruptive battery technology*** for the benefit of many around the world.
>
> *        *        *
>
> To further evolve the global electric vehicle landscape, we see the availability of a better battery as mission critical. At QuantumScape, we believe ***we have developed the key enabling technology*** that will propel this generational shift towards its full potential. We have developed a proprietary solid-state separator, which forms the heart of a solid-state battery, to construct our solid-state cells. Over the past decade, my team and I have focused exclusively on identifying and engineering the right materials to develop this technology and ***position us to achieve successful commercialization***. We have also dedicated significant time and resources in ***designing a scalable manufacturing process for producing and commercially deploying this battery technology***.
>
> *        *        *
>
> [W]e believe our lithium-metal battery technology is a ***game changer***. Our solid-state battery technology ***addresses the key limitations of traditional lithium-ion battery technology***, and we think this positions EVs to be much more competitive with internal combustion engine vehicles that today account for 98% of all vehicles sold. Our technology is supported by more than 200 patents, including patents

pending, and extensive trade secrets. These will be instrumental in keeping us ahead of the competitive curve.

We believe our battery technology provides *five key benefits as compared to traditional lithium-ion technology* that makes our offering *the ideal solution for use in electric vehicles*:

- Higher energy density

- Faster charge times

- Improved battery cycle life

- Enhanced safety, and

- Lower cost.

69.     That same day, the Company issued a press release announcing the Merger, which stated, "QuantumScape believes the proceeds from this transaction will *fully fund the company through the start of production* via its joint venture with Volkswagen Group." Defendant Singh reiterated that the "merger with Kensington and associated PIPE transaction allows us to *fund our business plans to first production*."

70.     Following completion of the Merger in November 2020, the Company did not retract or correct these statements. To the contrary, the Company continued to tout the supposedly "game chang[ing]" features of its solid-state batteries and its ability to commercialize the batteries over the near term.

71.     For example, a November 27, 2020 press release announcing completion of the Merger, stated: "Through its elegant 'anode-less' design, QuantumScape's lithium metal batteries are designed to be safer, and to deliver greater range, faster charge times, and improved cycle life, than today's conventional lithium-ion battery technology." The press release also quoted defendant Singh as saying, "This transaction allows QuantumScape to fund development and commercialization of our OEM-validated battery technology . . . ."

72.     Also on November 27, 2020, defendant Singh participated in an interview on CNBC's "Squawk on the Street." In discussing QuantumScape's battery technology, defendant Singh stated:

> Jagdeep Singh:  This is the beginning of a massive transformation in one of the largest industries on the planet. This is going to be a multidecade long transition. There is a huge opportunity to create, we believe, hundreds of billions of dollars of revenue over that time. The time to revenue does not reflect what is traditionally thought of as market risk or technology risk. ***We have technology that works***. Our OEM automotive customers have tested it and we have the support of the largest car company in the world, which is Volkswagen, which is out biggest investor. ***The time between now and first revenue is really spent doing two things. One is ramping up production. Batteries take time to build and scale up. And two is to do the final automotive qualification process, which also takes some time***.

> David Faber:  It is one thing for things to work in a laboratory and another for the to work at scale. You're confident in your battery, your solid-state battery, that of course will be able to be charged more quickly and obviously give a longer life that it will be able to work at scale and you'll be able to produce it at scale?

> Jagdeep Singh:  ***Well, what we are confident about is that the fundamental science risk is behind us*** because the battery has been tested at automotive power by the automotive OEMs themselves. And I think that relative to scaling the production, we obviously understand our technology well. We know the process that involved making it. But keep in mind that the production partnership is with Volkswagen. We have a joint venture with VW. We are going to jointly make these batteries at scale. Obviously, VW knows how to make very high volume, very high-quality product in the marketplace. So, yes, I think we are pretty comfortable that we are able to scale this. ***Our technology works***.

73.     Shortly after the Merger closed, on December 8, 2020, QuantumScape held a showcase of its battery technology, which was livestreamed on YouTube. The virtual event was attended by more than 4,500 livestream viewers, and generated significant media coverage and social media engagement.

74.     During the technology showcase, defendant Singh claimed that "QuantumScape technology can address the fundamental issues" that had prevented commercialization of solid-state batteries and that "this technology is in fact ***ready for commercial deployment*** as soon as we can scale up production and make multilayer versions of these cells."

75.     With respect to the benefits of QuantumScape's battery technology, defendant Singh claimed:

> Okay, so the quick summary is if you have a material that doesn't have the fundamental entitlement to serve as a solid-state separator, you can still make batteries out of that material but they only work under severely compromised test conditions and the main compromises that people use are either very low current densities, which ends up not being useful for real applications like driving a car, or the cycle efforts are being very short or the cells can only work at an elevated temperature or they require excess lithium, which lowers the energy density of the cell. ***These are problems that QuantumScape has addressed***.
>
> *       *       *
>
> [T]he solid-state separator already prevents dendrites, so there's no reason to slow down the rate of charge. You can start charging it at that really high rate until it gets all the way up to 80 percent in less than 15 minutes. This is not only ***better than any of the solid-state technology***, but it's ***better than you can achieve with conventional lithium-ion batteries***, which always have to manage this potential dendriting issues at higher rates of charge.

76.     Defendant Singh further claimed that, whereas other solid-state batteries "only work under severely compromised test conditions," QuantumScape's testing was "not sort of a compromised test conditions [sic]," and had been tested "under real world conditions":

> And then to assess cycle life, ***we run our cells under real world conditions***, which represents a room – close to room temperature, so 30 degrees Celsius, IC charge and discharge, this is one hour charge, one hour discharge.
>
> *       *       *
>
> ***There is zero excess lithium in these cells.*** These are thick cathodes, over three millamps symmetry squared, and this is the commercial area of the cells. So, ***these are all real world conditions***. In fact they're aggressive real world conditions because of the charge rates and discharge rates. ***They are not sort of a compromised test conditions***.
>
> And you see the battery lasts over 800 cycles, with well over 80 percent of capacity retained. The spec for commercial deployment of these batteries is in fact 80 percent or 800 cycles. So this is a really big milestone. No other battery, no other solid-state battery that we are aware of can, under these conditions, cycle anywhere near this well.
>
> And in addition, this is not just one hero cell, this is a whole batch of cells that we made and as you can see, the batch size cycles very reliably. So this is another challenge that battery companies have, is that you make one hero cell sometimes

that can cycle without shorting but it's very, very hard to make a high reliability batches of cells, and that's what we're showing here.

***So this really demonstrates that this technology is in fact ready for commercial deployment as soon as we can scale up production and make multilayer versions of these cells***. A super exciting result.

77.     Also on December 8, 2020, the Company issued a press release purporting to publicize "performance data" for its solid-state battery technology. The press release stated:

[QuantumScape], a leader in the development of next generation solid-state lithium-metal batteries for use in electric vehicles (EVs), has released performance data demonstrating that its technology ***addresses fundamental issues holding back widespread adoption of high-energy density solid-state batteries***, including charge time (current density), cycle life, safety, and operating temperature.

A commercially viable solid-state lithium-metal battery is an advancement that the battery industry has pursued for decades, as it holds the promise of a step function increase in energy density over conventional lithium-ion batteries, enabling electric vehicles with a driving range comparable to combustion engine-based vehicles. QuantumScape's solid-state battery is designed to enable up to 80% longer range compared to today's lithium-ion batteries. Previous attempts to create a solid-state separator capable of working with lithium metal at high rates of power generally required compromising other aspects of the cell (cycle life, operating temperature, safety, cathode loading, or excess lithium in the anode).

QuantumScape's newly-released results, based on testing of single layer battery cells, shows its solid-state separators are capable of working at very high rates of power, enabling a 15-minute charge to 80% capacity, faster than either conventional battery or alternative solid-state approaches are capable of delivering. In addition, the data shows that QuantumScape battery technology is capable of lasting hundreds of thousands of miles, and is designed to operate at a wide range of temperatures, including results that show operation at -30 degrees Celsius.

78.     The December 8 press release quoted Defendant Singh as saying:

We believe that the performance data we've unveiled today shows that solid-state batteries have the potential to narrow the gap between electric vehicles and internal combustion vehicles and help enable EVs to become the world's dominant form of transportation . . . Lithium-ion provided an important stepping stone to power the first generation of EVs. We believe QuantumScape's lithium-metal solid-state battery technology opens the automotive industry up to the next generation battery and creates a foundation for the transition to a more fully electrified automotive fleet.

79.     The press release continued to tout the supposed advantages of QuantumScape's battery technology relative to both lithium-ion batteries and competing solid-state batteries:

> Beyond its ability to function at high rates of power while delivering high energy density, other key characteristics of QuantumScape's solid-state lithium-metal battery technology include:
>
> - **Zero excess lithium**: In addition to eliminating the carbon or carbon/silicon anode, QuantumScape's solid-state design further increases energy density because it uses no excess lithium on the anode. Some previous attempts at solid-state batteries used a lithium foil or other deposited-lithium anode, which reduces energy density.
>
> - **Long life**: Because it eliminates the side reaction between the liquid electrolyte and the carbon in the anode of conventional lithium-ion cells, QuantumScape's battery technology is designed to last hundreds of thousands of miles of driving. Alternative solid-state approaches with a lithium metal anode typically have not demonstrated the ability to work reliably at close to room temperatures (30 degrees Celsius) with zero excess lithium at high current densities (>3mAh/cm2) for more than a few hundred cycles, and result in a short-circuit or capacity loss before the life target is met. By contrast, today's test results show that QuantumScape's battery technology is capable of running for over 800 cycles with greater than 80% capacity retention.
>
> - **Low-temperature operation**: QuantumScape's solid-state separator is designed to operate at a wide range of temperatures, and it has been tested to -30 degrees Celsius, temperatures that render some other solid-state designs inoperable.
>
> - **Safety**: QuantumScape's solid-state separator is noncombustible and isolates the anode from the cathode even at very high temperatures—much higher than conventional organic separators used in lithium-ion batteries.

80.     The representations made at the technology showcase drove a rapid increase in the Company's stock price, which grew more than 48% from its opening price of $51.73 on December 8 to close at $76.61 on December 10.

81.     Soon after the technology showcase, the Company filed a registration statement (the "Registration Statement") on Form S-1 with the SEC, which was initially filed December 17, and declared effective (after amendments) on December 31, 2020. The Registration Statement registered for resale more than 300 million shares of common stock, including all (or substantially all) of the QuantumScape shares held by defendants Singh, Holme, Hettrich, Prinz, Buss, Leohold, Mirro, and Straubel, as well as more than 70 million shares held by Volkswagen.

82.     In the Registration Statement, the Company continued to tout the "Benefits of [Its] Technology," including that QuantumScape's "battery technology will enable significant benefits across battery capacity, life, safety, and fast charging while minimizing costs."

83.     The Registration Statement touted "five key requirements" the batteries were intended to meet:

- ***Energy density.*** Our battery design is intended to significantly increase volumetric and gravimetric energy density by eliminating the carbon/silicon anode host material found in conventional lithium-ion cells. This increased energy density will enable EV manufacturers to increase range without increasing the size and weight of the battery pack, or to reduce the size and weight of the battery pack which will reduce the cost of the battery pack and other parts of the vehicle. For example, we estimate that out solid-state battery cells will enable a car maker to increase the range of a luxury performance EV—with 350 liters of available battery space—from 250 miles (400 km) to 450 miles (730 km) without increasing the size and weight of the battery pack . . . Alternatively, we believe that our solid-state battery cells will enable a car maker to increase the range of a mass market sedan—with 160 liters of available battery space— from 123 miles (230 km) to 233 miles (375 km) without increasing the size and weight of the battery pack . . .

- ***Battery life.*** Our technology is expected to enable increased battery life relative to conventional lithium-ion batteries. In a conventional cell, battery life is limited by the gradual irreversible loss of lithium due to side reactions between the liquid electrolyte and the anode. By eliminating the anode host material, we expect to eliminate the side reaction and enable

22

longer battery life. Our latest single layer prototype cells have been tested to over 800 cycles (under stringent test conditions, including 100% depth-of-discharge cycles at one-hour charge and discharge rates at 30 degrees Celsius with commercial-loading cathodes) while still retaining over 80% of the cells' discharge capacity.

- *Fast charging capability.* Our battery technology, and specifically our solid-state separator material, has been tested to demonstrate the ability to charge approximately 80% in 15 minutes, faster than commonly used high-energy EV batteries on the market. In these conventional EV batteries, the limiting factor for charge rate is the rate of diffusion of lithium ions into the anode. If a conventional battery is charged beyond these limits, lithium can start plating on carbon particles of the anode rather than diffuse into the carbon particles. This causes a reaction between the plated lithium and liquid electrolyte which reduces cell capacity and increases the risk of dendrites that can short circuit the cell. With a lithium-metal anode, using our solid-state separator, we expect the lithium can be plated as fast as the cathode can deliver it.

- *Increased safety.* Our solid-state battery uses a ceramic separator which is not combustible and is therefore safer than conventional polymer separators. This ceramic separator is also capable of withstanding temperatures considerably higher than those that would melt conventional polymer separators, providing an additional measure of safety. In higher temperature tests of our solid-state separator material with lithium, the separator material remained stable in direct contact with molten lithium without releasing heat externally, even when heated up to 250 degrees, higher than the 180-degree melting point of lithium.

- *Cost.* Our battery technology eliminates the anode host material and the associated manufacturing costs, providing a structural cost advantage compared to traditional lithium-ion batteries. We estimate that eliminating these costs will provide a savings of approximately 17% compared to the costs of building traditional lithium-ion batteries at leading manufacturers.

84. These statements drove further increases in the Company's stock price, which reached an all-time high closing price of $131.67 on December 22, 2020.

85.     On January 4, 2021, defendant Singh appeared on CNBC's "Closing Bell, "where he represented that QuantumScape's battery technology was better than lithium-ion and ready for market:

> We have something that has never been shown to the world before, a solid-state system that delivers levels of performance that are really record breaking not only in comparison to other solid-state efforts, but even in comparison to conventional lithium-on technology. So if we can get this into the market, which is the task we are currently focused on, ramping up production and making these multilayer cells. We absolutely think we can get a huge share of the market and if we can do that then investors will be well taken care of.

86.     On January 15, 2021, defendant Holme, the Company's CTO, published an article on LinkedIn discussing and elaborating on the performance data presented at the December 8 technology showcase.

87.     Defendant Holme claimed that QuantumScape's solid-state batteries were superior to lithium-ion batteries in multiple respects, including "perform[ing] significantly better" on stress tests of rapid charge-discharge cycles; providing better energy retention at extreme low temperatures; offering "improved" safety due to the use of a "thermally stable" separator; and providing higher "energy density," which allows for "greater range" while also "reduc[ing] costs."

88.     Defendant Holme concluded his article by stating:

> What makes QuantumScape's performance data interesting is not just that it shows over 1,000 cycles with good capacity retention, but that ***it does so under commercially-relevant conditions, including high current density, close-to-room temperature, full depth of discharge, modest pressure, zero excess lithium, and commercially-relevant area and cathode loading***. We hope this explanation helps provide a better understanding of the data we have shared and our progress toward developing solid-state lithium-metal batteries.

89.     On February 17, 2021, defendant Singh again appeared for an interview on CNBC's "Squawk on the Street." When asked about the Company's production schedule, Defendant Singh claimed that "most of the science – most of the chemistry risk is behind us . . . We feel like the

chemistry risk is largely behind us," and the primary risks facing the Company were "execution related tasks" in stacking battery cells.

90.     Then, on February 25, 2021, defendant Singh appeared for an interview on Yahoo! Finance Live. In discussing the December 8 technology showcase, Defendant Singh claimed that QuantumScape "[f]or the first time in 45 years, . . . was able to show a solid-state cell that was capable of performing under uncompromised test conditions—high rates of power—long cycle lives—unelevated temperatures."

91.     The foregoing statements by defendants were false and misleading because they failed to disclose that: (a) the Company's battery technology did not offer the benefits touted by the Company in terms of energy density, cycle life, and safety, and provided no meaningful improvement over existing battery technology; (b) the Company's battery technology was not sufficient for electric vehicle performance and could not withstand the rigors of use in automobiles; and (c) successful commercialization of the Company's battery technology was subject to more significant risks and uncertainties than had been disclosed.

92.     Defendants took advantage of the price inflation caused by their false and misleading statements to cause QuantumScape to conduct a secondary public offering of common stock, selling 10.4 million new shares at $40 per share. Defendants claimed that QuantumScape would use the proceeds of the offering to invest in product development and manufacturing facilities, despite previously representing that the proceeds from the Merger would "fully fund the company through the start of production." The SPO drove down the price of QuantumScape common stock, with the newly issued shares ultimately priced at a nearly 33% discount to the Company's share price of more than $59 immediately prior to announcement of the offering.

*Independent Investigation and Analysis Exposes Defendants' False and Misleading Statements*

93.     On January 4, 2021, Seeking Alpha published a report by Dr. Brian Morin concerning QuantumScape's battery technology.

94.     Dr. Morin has a Ph.D. in materials physics and has authored more than 250 global patent applications. He serves as CEO of Soteria Battery Innovation Group, and as Director and Vice President of the National Alliance for Advanced Technology Batteries.

95.     Based on his review of the December 8, 2020 technology showcase, Dr. Morin concluded that QuantumScape's batteries "are small and unproven" and have "never [been] tested outside a lab"; that "[t]here are significant risks associated with solid state batteries that have not been overcome"; that QuantumScape "will likely never achieve the performance they claim"; and that solid state batteries are "completely unacceptable for real world field electric vehicle performance."

96.     Dr. Morin's detailed analysis revealed that QuantumScape had overstated a number of data points, including with respect to power, range, low temperature life and operation, and energy density, and omitted important information concerning dendrites, safety, and cost.

97.     Following publication of the Seeking Alpha Report, QuantumScape's stock price fell more than $34.00 (or 41%) in a single day to close at $49.96 per share.

98.     Three months later, on April 15, 2021, the investment firm Scorpion Capital published a report entitled "QuantumScape (NYSE: QS) A Pump and Dump SPAC Scam by Silicon Valley Celebrities That Makes Theranos Look Like Amateurs" (the "Scorpion Capital Report").

99.     The Scorpion Capital Report was based on, among other things, interviews with former QuantumScape employees and industry experts.

100.    According to the Scorpion Capital Report, many of the claims made by QuantumScape with respect to its battery technology were false, including that the batteries resisted dendrites, performed well in low temperatures, reached 80 percent charge in 15 minutes, and had long life.

101.    The Scorpion Capital Report further revealed that many of QuantumScape's claims were based on compromised testing, using artificial conditions not representative of the real world, and/or test cells that were not representative of a "real product" or "real cell."

102.    The report also described instances where QuantumScape simply misrepresented the data, such as describing technology as operating at "room temperature," when it was really running at 45 degrees Celsius (or approximately 113 degrees Fahrenheit).

103.    The revelations in the Scorpion Capital Report caused further declines in the Company's stock price, which fell $9.90 (or more than 24%) over the four trading days beginning with publication of the report on April 15, 2021.

### The Director Defendants' Oversight Failures Enabled Defendants' False and Misleading Statements

104.    The Director Defendants had an obligation to oversee and monitor the public statements made by and on behalf of the Company and to ensure compliance with all legal and regulatory requirements, including ensuring those statements were neither false nor materially misleading. To satisfy these obligations, the Director Defendants were required to put in place a reasonable Board-level system of monitoring and reporting. The Section 220 Documents demonstrate that the Director Defendants utterly failed to do so.

105.    QuantumScape's central value proposition as a company is its supposedly "game-chang[ing]" solid-state battery technology. Development of solid-state batteries is the Company's sole focus, and commercialization of that technology alone would generate "hundreds of billions

of dollars of revenue" as the automotive industry transitioned to EVs, according to defendant Singh.

106.   Thus, the Director Defendants were well aware that statements made by or on behalf of the Company concerning its solid-state battery technology would be of particular interest to investors, and ensuring the accuracy of those statements was of paramount importance.

107.   Nevertheless, the Director Defendants did not have any policies or systems in place to be made aware of, much less to ensure the accuracy of, the statements to be made about the Company's battery technology or business prospects outside of formal SEC filings, such as in interviews or at the December 8, 2020 technology showcase.

108.   The 220 Documents do not reflect that the Director Defendants were ever made aware of defendant Singh's numerous media interviews or the statements he intended to make, either before or after the fact. Nor were the Director Defendants made aware of Defendant Holme's LinkedIn article.

109.   Despite being a major event for QuantumScape following on the heels of its debut as a public company, the 220 Documents do not reflect that the Director Defendants were apprised of the information the Company planned to present during the December 8 technology showcase or engaged in any review of that information to ensure it was accurate. The first mention of the technology showcase in the 220 Documents appears in the materials for the Board meeting on December 9, 2020—the day after the showcase.

110.   The 220 Documents also do not reflect any review, evaluation, or assessment by the Director Defendants or the Audit Committee Defendants of the Company's disclosure controls or procedures with respect to public statements concerning its battery technology or business prospects.

111.    The Director Defendants' abdication of their oversight responsibilities left Defendants free to make false and misleading statements concerning the Company's solid-state battery technology and business prospects through late 2020 and early 2021.

### Defendants' False and Misleading Statements Expose the Company to a Securities Class Action

112.    A securities class action was filed against the Company on January 5, 2021, and two additional actions were filed shortly thereafter. After consolidation and appointment of lead plaintiff and lead counsel, a consolidated amended complaint was filed in the consolidated action, *In re QuantumScape Securities Class Action Litigation*, Case No. 3:21-cv-0058 (N.D. Cal.) (the "Securities Class Action"), which named as defendants the Company and defendants Singh, Holme, and Hettrich.

113.    Plaintiffs in the Securities Class Action allege that the Company misled investors by falsely claiming that the Company's solid-state batteries had overcome the challenges that historically faced solid state batteries and were viable commercial competitors to conventional lithium-ion batteries. In particular, as summarized by the court, the Securities Class Action plaintiffs allege that:

> the batteries (1) did not form dendrites, (2) had greater range than conventional lithium-ion ones, (3) charged faster than conventional lithium-ion ones, (4) had better life cycles than conventional lithium-ion ones, (5) were tested using uncompromised tests in real-world conditions, (6) were ready for commercial use as soon as they could be scaled up, (7) would cost less than conventional lithium-ion ones, (8) were safer than conventional lithium-ion ones due to the solid separator, and (9) were more energy dense than lithium-ion ones. And they represented that the "fundamental science risk" was "behind them" and the "fundamental issues" were "addressed."

114.    The allegations in the Securities Class Action focus largely on statements made by the Company and its representatives in connection with the December 8, 2020 technology showcase, as well as statements made in media interviews of QuantumScape executives, including defendant Singh.

115.    On January 14, 2022, the court largely denied defendants' motion to dismiss the Securities Class Action.

116.    In doing so, the court credited the information disclosed in the *Seeking Alpha* and Scorpion Capital Reports, holding those reports credibly suggested that "QuantumScape's representations directly contradicted what it knew at the time about the fundamental risks. According to them, QuantumScape's batteries were *not* dendrite resistant under normal conditions, its cycle life was lower than reported, it was not safer (indeed, it may have been more dangerous), and it was not as energy dense" (emphasis in original). Moreover, according to the *Seeking Alpha* and Scorpion Capital Reports, "the reality was that QuantumScape overstated the objective capabilities of its batteries or reported them only from compromised tests. They report that, in reality, the QuantumScape batteries were not better than—and often were much worse than— conventional batteries."

117.    The court further held that the Securities Class Action plaintiffs had adequately alleged that the defendants acted with scienter and "intended to deceived investors," because "the statements that the defendants made over and over were, according to the plaintiffs' allegations, verifiable falsehoods."

118.    On December 19, 2022, the court granted class certification in the Securities Class Action, and again held that the *Seeking Alpha* and Scorpion Capital Reports had "indicia of reliability" and supported plaintiffs' claims.

## DAMAGES TO QUANTUMSCAPE

119.    As a direct and proximate result of Defendants' breaches of fiduciary duty, QuantumScape's market capitalization has been substantially damaged, resulting in a massive decline in shareholder value.

120.     In addition, QuantumScape has lost and expended, and will continue to lose and expend, millions of dollars due to, among other things: (a) payment of substantial compensation to Defendants, who failed to perform their duties in good faith and in the best interest of the Company; (b) liability to certain shareholders in connection with the Securities Class Action and other litigation; (c) defense costs in connection with the foregoing litigations, including defense costs advanced or reimbursed to the Company's offices and directors in connection with those matters.

121.     Defendants' breaches of fiduciary duty also have damaged the Company's reputation within the business community and capital markets, and the Company's ability to raise capital on favorable terms now and in the future is impaired. The Company stands to incur higher costs of capital and debt because Defendants' false and misleading statements have materially increased the perceived risks of investing in and lending to the Company.

122.     Plaintiff seeks to remedy the foregoing harms through the recovery of monetary damages and implementation of corporate governance reforms.

## DEMAND REFUSED ALLEGATIONS

123.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

124.     Plaintiff is an owner of QuantumScape common stock and has been a continuous shareholder of Company stock at all relevant times.

125.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

126.     At the time this action was commenced, the eleven-member Board consisted of defendants Singh, Prinz, Blome, Buss, Leohold, Saluja, Straubel, and Wiese and non-defendants Jeneanne Hanley, Gena Lovett, and Susan Huppertz.

127.     Plaintiff made a demand on the Board to investigate and remedy the violations of law described herein as required by Delaware law. As detailed below, the Board failed to substantively respond to the Demand, and apparently therefore has not evaluated its merits in good faith based on all information reasonably available to it.  And, as alleged below, the Board did not in fact act independently in its review of the Demand.  The Board's conduct upon receipt of the Demand and thereafter demonstrates not only that the Board did not fully inform itself during its consideration of the Demand, but also that the Board never considered the Demand in good faith, and failed to act on it for reasons unrelated to the merits of the claims and QuantumScape's best interests. Accordingly, the Board's failure to act on the Demand is not a protected exercise of business judgment.

128.     On May 3, 2023, Plaintiff sent a litigation demand to the Board, demanding that the Board "investigate breaches of fiduciary duty by the Company's current and former officers and directors, including causing or allowing the Company to make false and misleading statements about its battery technology and business prospects." A true and correct copy of this Demand is attached hereto as **Exhibit A**.

129.     On June 7, 2023, the Board sent a letter to Plaintiff's counsel claiming that it had established a Demand Review Committee (the "DRC"), the members of which were unidentified, to investigate Plaintiff's demand.

130.     Six months later, on December 11, 2023, after multiple inquiries from Plaintiff's counsel regarding the status of the DRC's "investigation," the DRC's counsel advised that it had

determined to "defer any investigation" of the allegations in Plaintiff's Demand and instead just monitor certain pending litigations that involve the same subject matter of the Demand, including the Securities Class Action that had ***already survived a motion to dismiss and had been granted class certification, almost assuring exposure of significant damages to the Company***.

131.    The Board's undue delay and failure to commence any semblance of an investigation into the alleged wrongdoing despite the Company's increasing risk of liability in the Securities Class Action is not a valid exercise of business judgment.

132.    The Board's failure to substantively consider Plaintiff's Demand was effectively a refusal of Plaintiff's Demand.  Plaintiff therefore has standing to sue derivatively.

133.    Moreover, a majority of the directors who received the Demand were not independent and disinterested.

134.    Eight members of the current Board—defendants Singh, Prinz, Blome, Buss, Leohold, Saluja, Straubel, and Wiese—are alleged to have breached their fiduciary duties by failing to implement reasonable procedures to oversee, and ensure the accuracy of, statements to be made by the Company and the Officer Defendants concerning QuantumScape's solid-state battery technology. These statements concern the Company's core operations, yet the Director Defendants had no policies or systems in place to ensure their accuracy. Therefore, these Defendants face a substantial likelihood of liability for breach of their fiduciary duties and cannot impartially consider a demand to pursue the claims asserted herein.

135.    Two members of the current Board—Defendants Buss and Saluja—were members of the Audit Committee and were specifically charged with overseeing the Company's reporting process, including the Company's internal controls over financial reporting and its disclosure controls and procedures. Nevertheless, in breach of their fiduciary duties, the Audit Committee

Defendants failed to implement any policies or procedures to ensure the accuracy of statements made by or on behalf of the Company concerning its battery technology. The Audit Committee Defendants face a substantial likelihood of liability for breach of their fiduciary duties and, therefore, cannot impartially consider a demand to pursue the claims asserted herein.

136.    The pendency of the Securities Class Action, which has survived a motion to dismiss and been granted class certification, renders it impossible for the current Board to impartially consider a demand to pursue the claims asserted herein because the actions are based on similar facts. If the Company pressed forward with its rights of action in this case, then the Company's efforts could undercut or compromise the defense and/or settlement of the Securities Class Action.

137.    Moreover, eight members of the current Board—Defendants Singh, Prinz, Blome, Buss, Leohold, Saluja, Straubel, and Wiese—were members of the Board during some or all of the time period at issue in the Securities Class Action and signed, authorized, or were responsible for overseeing the makers of the statements that are alleged to be false or misleading in the Securities Class Action. Pursuit of this action by the Company could expose these Defendants to personal liability in the Securities Class Action, and therefore, these Defendants could not impartially consider a demand to pursue the claims asserted herein.

## COUNT I

### Against Defendants Singh, Hettrich, and Holme for Contribution
### Under Sections 10(b) and 21D of the Exchange Act

138.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

139.    The Company and defendants Singh, Hettrich, and Holme are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations

of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to defendants Singh, Hettrich, and Holme's willful and/or reckless violations of their obligations as controlling shareholder, officers, and/or directors of QuantumScape.

140.    Defendants Singh, Hettrich, and Holme because of their positions of control and authority, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of QuantumScape, including the wrongful acts complained of herein and in the Securities Class Action.

141.    Accordingly, defendants Singh, Hettrich, and Holme are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

142.    As such, QuantumScape is entitled to receive all appropriate contribution or indemnification from defendants Singh, Hettrich, and Holme.

## COUNT II

### Against the Individual Defendants
### for Breach of Fiduciary Duty

143.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

144.    The Individual Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, candor, loyalty, and due care.

145.   The Individual Defendants willfully ignored the obvious deficiencies in the Company's internal controls, practices, and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

146.   The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

147.   As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

148.   As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

149.   Plaintiff, on behalf of QuantumScape, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Aiding and
### Abetting Breach of Fiduciary Duty

150.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

151.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

152.    Plaintiff on behalf of QuantumScape has no adequate remedy at law.

## COUNT IV

### Against the Individual Defendants for Unjust Enrichment

153.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

154.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, QuantumScape.

155.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from QuantumScape that was tied to the performance or artificially inflated valuation of QuantumScape or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

156.    Plaintiff, as a shareholder and a representative of QuantumScape, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

157.    Plaintiff on behalf of QuantumScape has no adequate remedy at law.

<u>**COUNT V**</u>

**Against the Individual Defendants for Waste of Corporate Assets**

158.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

159.    The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of the Company's internal controls, by issuing, causing the issuance of, and/or failing to correct the false and misleading statements identified herein, and by allowing the Company to engage in an illegal, unethical, and improper course of conduct, which was continuous, connected, and ongoing at all relevant times.

160.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (a) paying and collecting excessive compensation and bonuses; and (b) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

161.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

162.    Plaintiff on behalf QuantumScape has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      Declaring that Plaintiff may maintain this derivative action on behalf of QuantumScape and that Plaintiff is a proper and adequate representative of the Company;

B.      Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment;

C.      Directing QuantumScape to take all necessary actions to reform and improve its corporate governance and internal procedures to protect QuantumScape and its stockholders from a repeat of the damaging events described herein, including, but not limited to:

- strengthening the Board's supervision of operations and compliance with applicable state and federal laws and regulations;

- strengthening the Company's internal reporting and financial disclosure controls;

- developing and implementing procedures for greater shareholder input into the policies and guidelines of the Board; and

- strengthening the Company's internal operational control functions;

C.      Awarding punitive damages;

D.      Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: February 22, 2024

/s/ William M. Alleman, Jr.
**MELUNEY ALLEMAN & SPENCE, LLC**
Of Counsel:                                William M. Alleman, Jr. (Bar ID 5449)
                                           1143 Savannah Road, Suite 3-A
**MORRIS KANDINOV LLP**                    Lewes, DE 19958
Leonid Kandinov                            (302) 551-6740
Andrew Robertson                           bill.alleman@maslawde.com
550 West B Street, 4th Floor
San Diego, CA 92101                        *Attorneys for Plaintiff Darlene Jones*
(877) 216-1552
leo@moka.law
andrew@moka.law